697 P.2d 1263

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff-Respondent,**

v.

**FARMERS INSURANCE COMPANY OF IDAHO, Defendant-Appellant.**

**No. 15107.**

Court of Appeals of Idaho.

April 5, 1985.

David H. Maguire, of Maguire, Ward, Maguire & Eldredge, P.A., Pocatello, and Dan Frederick Hoopes, of Hopkins, French, Crockett & Springer, Idaho Falls, for defendant-appellant.

Louis F. Racine, Jr., of Racine, Olson, Nye & Cooper, Pocatello, for plaintiff-respondent.

Before BISTLINE,[1] Acting C.J., and McFADDEN[2] and OLIVER,[3] Acting JJ., Special Panel.

McFADDEN, Acting Judge.

This declaratory judgment action was initiated by Universal Underwriters Insurance Company and Stoddard-Mead Ford, Inc. against Farmers Insurance Company of Idaho (Insuror) and Roughlin Morgan and wife. It sought to determine which insurance company or whether both companies should indemnify Morgan in the sum of $320,000. That was the amount paid by the two companies to settle two wrongful death actions brought by others against Morgan charging him with negligence in a two-vehicle collision. Universal and Farmers, in cooperating to effect the settlement each reserved the right of reimbursement from the other depending on the outcome of this delcaratory judgment action.[4] Following motions for summary judgment by both parties, the trial court ruled favorably to Universal.

The undisputed facts are as follows: Morgan was a car salesman who had been working for Stoddard-Mead Ford, an automobile dealership in Idaho Falls, Idaho, since November 1960. He was employed on a commission basis and was entitled to the use of a demonstrator plus gasoline for both business and personal matters. The demonstrators are so kept by salesmen as integral to the business of selling. In April, 1981, Morgan's assigned demonstrator was a 1981 Ford truck. There was no specific agreement between Morgan and Stoddard-Mead regarding the use of the truck other than that Morgan, like other salesmen, was required to pay the flooring costs for the truck. Collision and liability insurance on the Ford truck (and other demonstrators) was provided by Stoddard-Mead's purchase of a policy of insurance from Universal.

Morgan had a potential purchaser who was showing interest in the purchase of a Ford Bronco, and who wanted to see a Bronco on Sunday, April 19th. Since another salesman had a Bronco demonstrator, Morgan arranged to take the Bronco home Saturday night in order to have it available for the prospect on Sunday.

On Sunday morning, Morgan left his home in the Bronco to drive to the store to pick up grocery items. With him was his daughter; the two of them intended to pick

---

1. Justice of the Supreme Court sitting by assignment.

2. Justice of the Supreme Court (retired) sitting by assignment.

3. District Judge (retired) of the Sixth Judicial District sitting by assignment.

4. The heirs of the decedents were also named as defendants in the original declaratory judgment action. By stipulation in the trial court all other parties were dismissed leaving only Universal and Farmers as parties in this appeal.

up a girl friend of Morgan's daughter, who would join the Morgan family for Easter dinner. Enroute to the store, Morgan collided with a motorcycle. Both the motorcyclist and his passenger were killed. Separate law suits were filed on behalf of the heirs of the decedents, which actions were settled by agreement of both carriers.

Universal's policy provided liability coverage for Stoddard-Mead vehicles in the amount of $100,000 per person with a maximum of $300,000 per occurrence. Universal also provided Stoddard-Mead with a one million dollar ($1,000,000) umbrella policy affording indemnity coverage for any action involving corporate liability.

At the time of the collision, Morgan had in effect his own personal liability insurance policy with Farmers, which provided him with coverage of $300,000 for death or bodily injury for each occurrence. Universal, while making no contention that it is not liable to some extent under its liability coverage policy insuring Stoddard-Mead,[5] initiated this action. It sought to establish Farmers' liability, and to adjudicate which policy is primary, which is secondary, or whether the two are equally applicable.

The described vehicle in Morgan's policy with Farmers was his personally-owned 1977 Mustang. The coverage also applies to "a non-owned automobile," which by policy definition meant "an automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, other than a substitute automobile."

The Farmers' policy excluded liability insurance coverage for "any non-owned automobile arising out of its use ... in the automobile business by the insured, ..." and defined automobile business as "[t]he business of selling, repairing, servicing, storing or parking automobiles, their parts or equipment."

Farmers raises three issues on appeal:

1. Whether as a matter of law the Ford Bronco owned by Stoddard-Mead and used by Morgan was a non-owned automobile as defined in the Farmers' Insurance Policy?

2. Whether as a matter of law Morgan's use of the Ford Bronco at the time of the accident arose out of the Bronco's use in the automobile business by the insured?

3. Whether as a matter of law Morgan was acting in the scope of his employment at the time of the accident in question?

Each will be discussed in turn.

## I.

"Non-owned automobile" is defined in Farmer's policy as an auto not owned by or regularly or frequently used by the named insured. Farmers contends that Morgan's use of the demonstrators was regular and frequent, therefore, the policy does not provide coverage for Morgan's use of the Ford Bronco. Universal contends that the trial court correctly concluded that Morgan's use of the Ford Bronco was not regular and frequent and thus is covered under Farmer's policy. We agree with Universal.

The considerations which are helpful in determining whether a car is "regularly or frequently" used include: was the use of the car in question made available most of the time to the insured? Did the insured make more than occasional use of the car? Did the insured need to obtain permission for the use of the car? Was there a purpose for the use of the car,

---

**5.** Universal's complaint alleged:

"IX.

"Plaintiff is the insurer of Stoddard-Mead Ford, Inc., under Policy No. 370027A which was in effect at the time of the accident. According to the terms of the policy, plaintiff extended insurance coverage to employees of the named insured while operating an automobile owned by the named insured provided such operation was with permission.

"X.

"According to the terms of the policy plaintiff extended to Stoddard-Mead Ford, Inc., insurance was afforded to employees operating an automobile owned by the insured for non-business purposes. The policy limits for bodily injury are $100,000 for each person and $300,000 for each occurrence and $50,000 for property damage for each occurrence."

was permission granted for that purpose, and was it being used for that purpose? Was its use at the time of the incident an expected use? *Farm Bureau Mutual Automobile Ins. Co. v. Marr,* 128 F.Supp. 67, 70 (D.N.J.1955). In this instance, the undisputed facts show that the Bronco was not owned by Morgan; Morgan was specifically assigned the use of another vehicle; the Bronco was specifically assigned to another salesman; Morgan made special arrangements to use the Bronco on this occasion; and, at the time of the accident, Morgan was using the Ford Bronco for only the third time. Thus, it is the conclusion of this Court as a matter of law that Morgan's use of the Bronco was not regular or frequent. Therefore the trial court was not in error in concluding the exclusion applied.

## II.

The Farmer's policy also excludes coverage for a non-owned automobile arising out of its use in the automobile business by the insured. The policy defines automobile business to include the business of selling automobiles. Farmers contends that Morgan's use of the car at the time of the accident arose out of Morgan's negotiations with his client, and therefore arose out of the automobile business. Universal insists that the trial court correctly focused on Morgan's use of the Bronco at the time of the accident, and therefore, found that the use was not in the automobile business. Again, we agree with Universal.

We have stated that this type of "automobile business exclusion" clause focuses on the use of the insured automobile at the time of the accident and requires a narrow construction. *Continental Nat. American Gp. v. Allied Mut. Ins. Co.,* 95 Idaho 251, 253, 506 P.2d 478, 480 (1973). Here, the undisputed material facts show that at the time the accident occurred, Morgan was on a purely personal mission with no incidental business connection other than the mini-

mal benefit which might accrue to Stoddard-Mead by having a Ford demonstrator on the public highway. Thus, as a matter of law, Morgan's use of the Bronco did not arise out of its use in the automobile business. The trial court did not err in this regard.

## III.

Farmers contends that the trial court erred in determining as a matter of law that Morgan was not acting within the scope of his employment at the time of the accident. It urges that "scope of employment" is a question for the jury. However, where there is no material issue of fact, the court may determine the question as a matter of law. Further, summary judgment is proper when the pleadings, depositions and admissions together with the affidavits, if any, show that there is no genuine issue as to material fact. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

The undisputed facts in this record contain no suggestion of any business purpose at the time of the accident. *See State ex rel City Motor Co., Inc. v. District Court,* 166 Mont. 52, 530 P.2d 486 (1975). Therefore, the trial court properly ruled as a matter of law that Morgan was acting outside the scope of his employment at the time of the accident.

The judgment of the trial court is affirmed.

Costs to respondents.

No attorney fees on appeal.

BISTLINE and OLIVER, Acting JJ., concur.