**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Plaintiff/Appellant,**

v.

**Robert L. MOORE, Patricia K. Moore, Stacy M. Moore, Joseph Harwell and Penny Milton, Defendants/Appellees,**

and

**Hatcher Autoplex and Universal Underwriters Insurance Company, Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

April 16, 1997.

Application for Permission to Appeal Denied by Supreme Court Oct. 6, 1997.

John S. Little, Jackson, for Plaintiff/Appellant.

Lewis L. Cobb, Jackson, for Defendants/Appellees.

Thomas F. Preston, Memphis, for Defendants/Appellants.

## OPINION

LILLARD, Judge.

This case involves the interpretation of two automobile insurance policies. Plaintiff/Appellant Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") filed a declaratory judgment action against Defendants/Appellees Robert L. Moore, Patricia K. Moore, Stacy M. Moore, Joseph Harwell, Penny Milton, Universal Underwriters Insur-

ance Company ("Universal Underwriters"), and Hatcher Chevrolet, Buick, Pontiac, Oldsmobile, GMC Trucks, Inc. ("Hatcher Autoplex") to determine the respective rights and obligations of the parties arising out of an automobile accident. Stacy Moore, the sixteen-year-old daughter of Robert and Patricia Moore, was involved in a one-car accident while driving a car owned by Hatcher Autoplex. The trial court held that Stacy was a covered insured under the Moores' policy with Tennessee Farmers and that she was covered secondarily under Hatcher Autoplex's policy with Universal Underwriters. Tennessee Farmers, Universal Underwriters and Hatcher Autoplex appeal the trial court's decision. We affirm.

Robert and Patricia Moore were the named insureds on an automobile insurance policy with Tennessee Farmers. The Moores were married but separated at the time of the accident, and all three of the vehicles listed in the policy were kept at Robert Moore's residence. Their daughter Stacy lived with Mrs. Moore.

Patricia Moore was employed by Hatcher Autoplex. Hatcher Autoplex provided demonstrator vehicles to some of its employees, including Mrs. Moore. She had used demonstrator vehicles provided to her as her primary source of transportation since she became employed as Hatcher Autoplex's office manager in 1986. Each employee who was permitted to use demonstrator vehicles was assigned a specific demonstrator. The demonstrators were insured under Hatcher Autoplex's garage policy with Universal Underwriters.

Some of Hatcher Autoplex's employees were instructed not to allow family members to drive the demonstrators and were required to sign a written statement to this effect ("Demonstrator Agreement"). Patricia Moore prepared these forms for other employees, but Hatcher Autoplex never instructed her not to allow family members to drive the demonstrators assigned to her and never required her to sign a Demonstrator Agreement. Consequently, at times she had permitted some family members to drive the demonstrators assigned to her. Occasionally, Patricia Moore would find that the demonstrator vehicle regularly assigned to her had been sold or was otherwise unavailable. On those occasions she was permitted to use any available demonstrator until she was assigned another. If no demonstrator vehicle was available, she was permitted to take another car off the Hatcher Autoplex lot.

When Patricia Moore left work on December 31, 1990, she found that her assigned demonstrator vehicle had been sold. Another demonstrator vehicle, regularly assigned to car salesman Jim Smith, was available on that day. Mrs. Moore took the keys to Smith's demonstrator and drove home in that vehicle ("Hatcher vehicle").

After Mrs. Moore got home, she gave Stacy permission to take the Hatcher vehicle to a New Year's Eve party. She admonished Stacy to go straight to the party and straight home and not to carry any passengers. Stacy drove to the party but deviated from her mother's instructions; she had two passengers with her, and she did not drive straight to and from the party. While driving the Hatcher vehicle that night, she was involved in a one-car accident. Stacy and her two passengers, Joseph Harwell and Penny Milton, sustained injuries. Harwell and Milton subsequently filed tort actions against the Moores and Hatcher Autoplex.

Tennessee Farmers then filed a lawsuit for declaratory judgment, seeking a declaration that it was not obligated to defend or pay claims filed against the Moores for Stacy's accident under the Moores' automobile insurance policy with Tennessee Farmers. The Complaint was later amended to include Universal Underwriters as a defendant, asserting that claims arising out of Stacy's accident were the obligation of Universal Underwriters only or, in the alternative, that Universal Underwriters' coverage was primary and Tennessee Farmers' coverage was secondary.

The Moores' policy with Tennessee Farmers provides the following:

### Part A and B

### Liability Coverage

You have this coverage if "A and B" appears under "Coverages" in the Declarations.

*Definitions of words and terms as used in this Part A and B*

1. *Covered person* means:

 a. **you** or any **family member** for the maintenance or use of any **auto or trailer** . . . .

The policy defines "you" and "your" as the named insureds, who are listed in the declarations page of the policy as Robert and Patricia Moore. It defines "family member" to include a child of a named insured who lives in the same household as a named insured.

The Tennessee Farmers policy also contains the following exclusions:

**We** do not provide liability coverage under this Part A and B:

\* \* \*

7. for any person or entity while employed or otherwise engaged in the business or occupation of selling . . . vehicles . . . ;

\* \* \*

10. for the **ownership,** maintenance, or use of any vehicle, other than **your covered auto,** which is **owned** by or furnished or available for the regular use of **you,** any **family member** or any person residing in a covered person's household;

\* \* \*

16. for the use, operation, or **occupancy** of any **auto** that **you** do not own without the permission of the **owner** or person or entity in lawful possession of the **auto,** or for the use, operation, or **occupancy** of any such **auto** outside the scope of that permission.

At trial, Tennessee Farmers argued that the Hatcher vehicle involved in Stacy's accident was not owned by the Moores and was "furnished or available for the regular use"

of Patricia Moore and was therefore excluded from coverage under paragraph 10, above. Tennessee Farmers also contended that Stacy was "engaged in the business of selling . . . vehicles," so the Hatcher vehicle was excluded from coverage under paragraph 7, above. Finally, Tennessee Farmers maintained that Stacy's use of the Hatcher vehicle was "without permission" or "outside the scope of that permission" and consequently was excluded from coverage under paragraph 16, above.

The Hatcher Autoplex policy with Universal Underwriters provides the following:

WHO IS AN INSURED— . . .

\* \* \*

With respect to the AUTO HAZARD:

1. You;

2. Any of YOUR partners, paid employees . . . a member of their household . . . while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission. . . .

The policy defines "you" and "your" as the named insured, which is listed in the policy as Hatcher Autoplex.[1] Universal Underwriters argued at trial that Stacy did not have Hatcher Autoplex's permission to use the Hatcher vehicle and that she was therefore not covered under the policy language.

After a bench trial, the trial court noted that the vehicle used by Stacy the night of the accident was assigned to Jim Smith and that Mrs. Moore borrowed it on that day. The trial court stated that this occasion was Mrs. Moore's first use of this vehicle and "it was not used by her on a regular or frequent basis." The trial court also found that:

. . . Stacy Moore had the initial permission of Patricia Moore to use the vehicle and was within the scope of such permission when the accident occurred.

1. Universal Underwriters and Hatcher Autoplex also contend that the accident is not covered under the policy because Stacy did not have the permission of Mr. and Mrs. Donnie Hatcher to use the Hatcher vehicle. The Universal Underwriters policy designates the insured for the cov-

erage at issue in this case as "01." Hatcher Autoplex is the only insured listed under "01" in the declarations page of the policy. Therefore, Stacy needed only Hatcher Autoplex's permission for purposes of the Universal Underwriters policy.

Finally, the trial court found that no restrictions had been placed on Mrs. Moore's use of Hatcher Autoplex vehicles and that "[s]he had broad permission and wide discretion as to the use of the vehicles." It determined that Universal Underwriters "failed to rebut the statutory presumption that Stacy Moore was driving with Hatcher Autoplex's authority."

Based on these findings, the trial court concluded that Stacy was covered under the Tennessee Farmers policy and that she was covered secondarily under the Universal Underwriters policy. Tennessee Farmers appealed the trial court's decision. Universal Underwriters and Hatcher Autoplex also appealed to this Court.

On appeal, Tennessee Farmers first argues the trial court erred in finding that the Hatcher vehicle was not excluded from coverage under the policy because it was not furnished or available for Patricia Moore's regular use. Tennessee Farmers next contends that the policy does not provide coverage because Stacy Moore was engaged in the business of selling cars. In addition, Tennessee Farmers argues that the trial court erred in finding that Stacy Moore had Hatcher Autoplex's permission to use the Hatcher vehicle. Alternatively, Tennessee Farmers maintains that, even if its policy does provide coverage for the accident, the Universal Underwriters policy provides primary coverage.

Universal Underwriters and Hatcher Autoplex argue that the trial court erred in finding that Hatcher Autoplex did not restrict Patricia Moore's use of the demonstrators. Further, they maintain that they rebutted the statutory presumption that Stacy Moore was driving with Hatcher Autoplex's authority. Finally, they contend that the trial court erred in finding that Stacy was acting within the scope of her permission at the time of the accident.

Because this case was tried by the court sitting without a jury, we review this case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn.R.App.P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

 Insurance contracts are subject to the same general rules of construction and enforcement applicable to other contracts. *McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn. 1990). In construing contracts, the words expressing the parties' intentions should be given their usual and ordinary meaning. *Allstate Ins. Co. v. Wilson,* 856 S.W.2d 706, 709 (Tenn.App.1992). In case of doubt as to the meaning of a term in an insurance policy, the policy language should be construed against the party who has drawn it. *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 363, 365 (Tenn.1973). These rules of interpretation also apply to exclusions in insurance policies, which are to be construed against the insurer and in favor of the insured. *Id.* at 367.

In its brief, Tennessee Farmers contends that the trial court erred in finding that the Hatcher vehicle was a "covered auto" under the Moores' insurance policy. However, rather than holding that the Hatcher vehicle was a "covered auto," the trial court concluded that Stacy Moore was a "covered person" under the policy:

> It is clear that Stacy Moore is a covered person and that the company "will pay damages up to 'their' limit of liability for this Coverage A and B for bodily injury and property damage for which any covered person becomes legally liable to pay because of an accident."

The Tennessee Farmers policy provides coverage for the "family member" of a named insured and defines "family member" to include a child living in the same household as a named insured. At the time of the accident, Stacy lived in the same household as her mother, Patricia Moore, a named insured. Thus, the trial court correctly concluded that Stacy was a "covered person" within the meaning of the policy. Under the policy, then, she was entitled to liability coverage for "any auto," not just a "covered auto," unless coverage is excluded by other policy provisions.

 Tennessee Farmers argues that the trial court erred in finding that the Hatcher

vehicle was not "furnished or available for the regular use" of Patricia Moore and therefore did not fall within the policy exclusion for such vehicles when not listed as a covered vehicle. A similar exclusion was discussed in *United Services Automobile Ass'n v. Couch,* 643 S.W.2d 668 (Tenn.App.1982). In *Couch,* an insurance company brought a declaratory judgment action to determine its liability for an automobile accident under a policy with a "regular use" exclusion. *Id.* at 669. The insurance company denied coverage on the ground that the vehicle involved in the accident was "furnished or available" for Couch's regular use by his employer, a pizza parlor. *Id.* The pizza parlor had several vehicles for employee use, and none of the vehicles was assigned to a specific employee. *Id.* at 670. Couch used whichever of the furnished vehicles was available when performing work that required a vehicle. *Id.* The Court reasoned "[t]hat the issue of regularity hinges upon the regularity with which the vehicle was furnished or available." *Id.* at 672. The Court noted that the policy underlying the exclusion was to provide coverage for the occasional use of a vehicle when there was no opportunity to investigate insurance coverage and to exclude coverage when the insured regularly used a vehicle and had the opportunity to secure coverage. *Id.* It observed that the pizza parlor regularly provided cars for its employees to use when delivering pizzas. *Id.* Finding that the vehicle was regularly available to Couch, the Court held that the exclusion applied. *Id.*

The parties also cite cases from other jurisdictions. The Moores contend that this case is on all fours with *Universal Underwriters Insurance Co. v. Farmers Insurance Co.,* 108 Idaho 249, 697 P.2d 1263 (1985). In that case, a car dealership assigned specific demonstrator vehicles to its sales staff. *Id.* at 1264, 1266. One car salesman got special permission to borrow another salesman's assigned demonstrator to show the car to a prospective customer. *Id.* at 1264. While driving the borrowed car, the salesman collided with and killed a motorcyclist and his passenger. *Id.* at 1265. In that case, the salesman's personal insurance policy excluded coverage for non-owned vehicles that he "regularly or frequently used." *Id.* The

Court concluded that the use of the car was not regular because the salesman had his own specifically assigned demonstrator, he had made special arrangements to use the other salesman's car, and he was using the car for only the third time. *Id.* at 1266.

Tennessee Farmers relies on cases holding that a car that is one of a group of cars will be excluded under a "regular use" provision if the group of cars is regularly made available to a named insured. *See, e.g., Bringle v. Economy Fire & Cas. Co.,* 169 N.W.2d 879, 883–84 (Iowa 1969) (holding that a truck that was one of five trucks regularly furnished to a carpet layer by his employer was furnished for his "regular use"); *Winterwerp v. Allstate Ins. Co.,* 277 Md. 714, 357 A.2d 350, 355 (1976) (holding that a fire truck fell within a "regular use" exclusion because it was one of a group of firefighting vehicles regularly available to a volunteer fireman); *Farm Bureau Mut. Auto. Ins. v. Boecher,* 48 N.E.2d 895, 896 (Ohio.Ct.App.1942) (holding that a used car owned by a car dealership was furnished for a car salesman's "regular use" when he had access to any of the used cars on the lot). Tennessee Farmers contends that the "regular use" exclusion applies in this case because the Hatcher vehicle was one of a group of demonstrators that was furnished or available for Patricia Moore's regular use.

In this case, the testimony established that Patricia Moore did not use a different demonstrator vehicle each day; rather, she used a regularly assigned demonstrator unless it had been sold or was otherwise unavailable. If her regularly assigned demonstrator was unavailable, she was permitted to temporarily utilize another vehicle only until her regularly assigned demonstrator became available or until she was assigned another demonstrator for her regular use. Therefore, the entire group of demonstrator vehicles was not "furnished or available" for Mrs. Moore's "regular use"; those cars were available only for *occasional* use when her regularly assigned demonstrator was unavailable. While Mrs. Moore's regularly assigned demonstrator may have been excluded as "furnished or available for [her] regular use," the same

cannot be said of the Hatcher vehicle involved in the accident.

Thus, unlike *Couch* and the cases from other jurisdictions cited by Tennessee Farmers, the Hatcher vehicle was not one of an entire group of vehicles "available" for Mrs. Moore's "regular use." The *Universal Underwriters* case cited by the Moores is distinguishable from this case in some respects; the policy excluded non-owned vehicles "regularly or frequently *used*," and unlike Mrs. Moore, the driver of the vehicle had to make special arrangements to use another salesman's demonstrator vehicle. However, in *Universal Underwriters*, the court focused on the use of the particular vehicle involved in the accident, noting that the driver was specifically assigned another demonstrator vehicle. In the instant case, although Mrs. Moore did not make special arrangements to use the Hatcher vehicle involved in the accident, it was assigned to another employee. Under these circumstances, the trial court did not err in concluding that the vehicle was not "furnished or available" for Mrs. Moore's regular use and that the policy exclusion did not apply. The trial court is affirmed on this issue.

■ Tennessee Farmers next argues that Stacy Moore was not covered by its policy because she was "engaged in the business ... of selling ... vehicles," as set forth in the policy's exclusions. Tennessee Farmers contends that Stacy was operating the Hatcher vehicle for the benefit of Hatcher Autoplex. It relied on the testimony of the owner of Hatcher Autoplex, Donnie Hatcher, that he permitted employees to drive demonstrator vehicles partly because his business was enhanced "every time one of these demonstrators is on the road and getting General Motor's [sic] exposure ..." Tennessee Farmers reasons from this that Stacy's use of the demonstrator benefitted Hatcher Autoplex and thus was tantamount to selling cars for the purposes of this exclusion.

■ To support its position, Tennessee Farmers cites Tennessee Code Annotated § 55–10–311, which provides that evidence of ownership of an automobile is prima facie evidence that the automobile is "being operated and used with the authority, consent and knowledge of the owner." Tenn.Code Ann. § 55–10–311 (1993). The statute provides further that proof of ownership is prima facie evidence that the operation of an owner's vehicle by a servant is "for the owner's use and benefit and within the course and scope of the servant's employment." *Id.* The statutory presumption can be rebutted. *See, e.g., Ferguson v. Tomerlin,* 656 S.W.2d 378, 381–82 (Tenn.App.1983) (finding presumption rebutted by evidence that daughter let a friend drive her father's car when father told her no one else was allowed to drive it).

Although there is no case in Tennessee addressing an exclusion with this particular language, a similar exclusion was discussed in *Universal Underwriters Insurance Co. v. Farmers Insurance Co.,* in which a car salesman borrowed another salesman's assigned demonstrator to show a prospective buyer and collided with a motorcycle while on the way to the grocery store. 697 P.2d at 1265. The salesman's personal insurance company claimed that the policy's business purpose exclusion applied because the salesman was engaged in the business of selling cars. *Id.* at 1266. The court reasoned that the exclusion "focuses on the use of the insured automobile at the time of the accident and requires a narrow construction." *Id.* at 1266 (citing *Continental Nat'l Am. Group v. Allied Mut. Ins. Co.,* 95 Idaho 251, 506 P.2d 478, 480 (1973)). It noted that, at the time of the accident, the salesman was running a personal errand that was unrelated to the business of selling cars. *Id.* Although the car dealership might have received some incidental benefit from having the demonstrator on public roads, the court held that the salesman was not engaged in the business of selling cars at the time of the accident so as to fall within the exclusion. *Id.*

In the instant case, it is undisputed that Stacy Moore was not employed by Hatcher Autoplex. At the time of the accident, Stacy was using the car to go to a New Year's Eve party. Any benefit that Hatcher Autoplex might have received from having the demonstrator on public roads was merely incidental. Therefore, Stacy was not engaged in the business of selling cars and this exclusion did

not apply. Tennessee Farmers' argument on this issue is without merit.

■ Tennessee Farmers, Universal Underwriters, and Hatcher Autoplex all maintain that the trial court erred in finding that Stacy's use of the Hatcher vehicle was with permission and that she was within the scope of that permission when the accident occurred. The Tennessee Farmers policy excludes coverage for the use of an unowned vehicle without permission or outside the scope of the permission. The Universal Underwriters policy likewise covers the use of an unowned vehicle only if it is within the scope of the permission granted.

Tennessee Farmers, Universal Underwriters, and Hatcher Autoplex argue that Stacy did not have the permission of Hatcher Autoplex to use the Hatcher vehicle. They note that Hatcher Autoplex required most employees to sign a Demonstrator Agreement that prohibited employees from allowing family members to drive demonstrators. Although Patricia Moore was not required to sign a Demonstrator Agreement, she prepared the forms for the agreements and, they argue, was aware of and bound by the prohibition.

■ Generally, a second permittee is not covered under the omnibus clause of an insurance policy unless the second permittee had the permission of the named insured. *Schultz v. Tennessee Farmers Mut. Ins. Co.,* 218 Tenn. 465, 471, 404 S.W.2d 480, 482 (1966). Permission does not have to be expressly given; it may be implied:

> It is not necessary that the named assured signify his "permission" in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense "implied permission" from the named assured would be sufficient to bring a driver within the additional assured clause.

> But such "implied permission" must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion and grants his own permission to the particular person.

*Card v. Commercial Cas. Ins. Co.,* 20 Tenn. App. 132, 138, 95 S.W.2d 1281, 1285 (1936).

In *Southern Fire & Casualty Co. v. Vincent Wholesale Distributors, Inc.,* No. 02A01–9404–CV–00070, 1995 WL 522834 (Tenn.App. Sept.5, 1995), the principles in *Card* were applied to facts involving a second permittee. In *Southern Fire,* Joe and Linda Vincent bought a car for their daughter, Kelly, but told her not to allow anyone else to drive it. *Id.* at *2. Kelly disobeyed her parents' instructions and let one of her friends, April, drive the car to a party one night. *Id.* at *2–3. While Kelly was inside the party, April and a young man drove off in Kelly's car without Kelly's knowledge or permission and were later killed in a car accident. *Id.* at *1–3. The trial court in that case found that Kelly was a first permittee of her mother. *Id.* at *3. Because Kelly's parents told her not to allow anyone else to drive the car, the trial court found that she had no authority to allow anyone else to drive the car. *Id.* Thus, the trial court concluded that April did not have Kelly's implied permission to use the car. *Id.* On appeal, this Court affirmed. *Id.* at *4. The appellants argue that the instant case is similar to *Southern Fire* in that Stacy was not given express permission by Hatcher Autoplex and her use of the vehicle was contrary to the prohibition in the Demonstrator Agreements.

In this case, Patricia Moore was a first permittee of Hatcher Autoplex, and Stacy was a second permittee. Hatcher Autoplex required some of its employees to sign a Demonstrator Agreement prohibiting family members from driving the vehicles. Moreover, Hatcher Autoplex never required Patricia Moore to sign a Demonstrator Agreement and never told Mrs. Moore not to allow family members to drive the vehicles. Mrs. Moore testified that Mr. Hatcher knew that

she used the vehicles as if they were her personal vehicles. This evidence was sufficient for the trial court to conclude that Hatcher Autoplex gave Patricia Moore "broad permission and wide discretion as to the use of the vehicles" that included permission to allow family members to drive the vehicles. The trial court is affirmed on this issue.

■ Appellants Tennessee Farmers, Universal Underwriters, and Hatcher Autoplex next contend that the trial court erred in finding that Stacy's use of the Hatcher vehicle was within the scope of the permission granted by Patricia Moore and was therefore not excluded from coverage under the Tennessee Farmers and Universal Underwriters policies. In support of this position, Universal Underwriters and Hatcher Autoplex note that Robert and Patricia Moore filed a motion for summary judgment in one of the underlying tort actions, claiming that the family purpose doctrine did not render them personally liable because Stacy exceeded the scope of their permission. Universal Underwriters and Hatcher Autoplex state that the trial court in that case granted the Moores' motion for summary judgment because Stacy exceeded the scope of her mother's special permission. They argue that collateral estoppel bars relitigation of this issue. For collateral estoppel to apply, identical issues must have been actually litigated in the prior suit. *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn.1995). The family purpose doctrine involves issues different from those presented in this lawsuit. *See Gary v. Amos,* 869 S.W.2d 925, 926 (Tenn.App.1993) (noting that the family purpose doctrine requires that the owner purchase and maintain the vehicle for family use, with the family members having general permission to use the vehicle). Therefore, the trial court's grant of summary judgment on that issue likely would not have been controlling in this case. In any event, the trial court's order, the motion, and the accompanying affidavits in the underlying tort action are not part of the record in this case and cannot be considered by this Court on appeal. Tenn.R.App.P. 13(c).

■ Apart from this, the appellants argue that the facts establish that Stacy's use was outside the scope of her mother's permission and was therefore excluded from coverage. In support, they cite *Hubbard v. U.S. Fidelity & Guaranty Co.,* 192 Tenn. 210, 240 S.W.2d 245 (1951). In *Hubbard,* the Tennessee Supreme Court considered whether an employee exceeded the scope of his employer's permission. *Id.* at 213, 240 S.W.2d at 245–46. The employee in that case had permission to use his employer's motorcycle only when furthering his employer's business and only during his working hours. *Id.* at 212, 240 S.W.2d at 246. While using the motorcycle after work for his own pleasure, the employee parked the motorcycle without shutting off its motor. *Id.* at 213, 240 S.W.2d at 246–47. The motorcycle shifted into gear and became involved in an accident. *Id.* at 213, 240 S.W.2d at 247. The Court reasoned:

> The initial permission is not controlling where the use is limited to a specific purpose for a limited time and the driver takes the car for his own purposes and has an accident when using the car in a ***complete departure*** from any business of or permission by the owner.

*Id.* at 217, 240 S.W.2d at 248 (emphasis added). Because the employee had only limited authority to use the motorcycle and was not furthering his employer's purposes, the Court affirmed the decision of the Court of Appeals holding that the employee was not acting with his employer's permission. *Id.* at 213, 216–17, 240 S.W.2d at 247–48.

In this case, Patricia Moore gave her daughter permission to drive the car to a party but told her to drive straight to the party and straight back and not to carry any passengers. Stacy used the vehicle primarily as intended, to go to the party, but deviated from her mother's instructions by carrying passengers and not driving straight to and from the party. Unlike *Hubbard,* this deviation from the limited permission granted was not such a complete departure so as to compel a finding that Stacy used the vehicle outside the scope of her mother's permission. Therefore, the evidence does not preponderate against the trial court's finding that Stacy was "within the scope of [her mother's] per-

mission when the accident occurred" and consequently was not excluded from coverage under the Tennessee Farmers and Universal Underwriters policies. The trial court is affirmed on this issue.

■ Alternatively, Tennessee Farmers argues that Hatcher Autoplex's garage policy with Universal Underwriters provides primary coverage. Tennessee Farmers cites Tennessee Code Annotated § 56–7–1101(a)(1), which provides:

> In all cases arising out of the use of a motor vehicle on which the owner of the motor vehicle has any insurance coverages, the owner's policy is primary if the vehicle is being operated with the permission of the owner and within the scope of the permission granted.

Tenn.Code Ann. § 56–7–1101(a)(1) (1994). However, Tennessee Code Annotated § 56–7–1101(b) provides that an owner's policy is secondary if the owner's policy is a garage policy. Tenn.Code Ann. § 56–7–1101(b) (1994). Tennessee Farmers argues that the legislature intended § 56–7–1101(b) to apply only when a person is test-driving a vehicle or otherwise using a vehicle only temporarily. Because Patricia Moore used the demonstrators as her primary source of transportation, Tennessee Farmers argues that § 56–7–1101(b) has no application to this case. Thus, Tennessee Farmers argues that the Universal Underwriters policy provides primary coverage under § 57–6–1101(a).

The principles of statutory construction require that a court "ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993). Legislative intent should be determined by the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distrib., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991).

Section 56–7–1101(b) contains no language requiring that the use of the vehicle be related to test-driving or temporary use before an owner's garage policy will be secondary. The plain language of the statute indicates only that the owner's policy will be secondary

if it is a garage policy. Therefore, the trial court correctly held that the Moores' policy with Tennessee Farmers is primary and that Hatcher Autoplex's garage policy with Universal Underwriters is secondary. The trial court is affirmed on this issue.

Accordingly, the judgment of the trial court is affirmed on all issues. Costs are taxed to Appellants, for which execution may issue if necessary.

HIGHERS, and FARMER, JJ., concur.