# FILED

**December 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

BELLEVUE PROPERTIES, LLC,  )
            )
 Plaintiff/Appellee,    )
            )  Appeal No.
v.           )  M1999-01480-COA-R3-CV
            )
UNITED RETAIL INCORPORATED, )  Davidson Chancery
et al,          )  No. 97-966-I
            )
 Defendants/Appellants.   )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

DAVID K. TAYLOR
COLIN J. CARNAHAN
Boult, Cummings, Conners & Berry
414 Union Street, Suite 1600
P. O. Box 198062
Nashville, Tennessee 37219
  ATTORNEYS FOR PLAINTIFF/APPELLEE

JOHN C. TISHLER
WARREN A. JASPER
Tuke Yopp & Sweeney
NationsBank Plaza, Suite 1100
414 Union Street
Nashville, Tennessee 37219

ATTORNEYS FOR DEFENDANTS/APPELLANTS

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case concerns the burden placed on a commercial landlord in mitigating damages caused by a commercial tenant's abandonment of the leased property. Although our courts heretofore have required a landlord who suffers breach to use reasonable commercial methods to reduce his damages, this tenant-in-breach would read two additional duties into those reasonable commercial methods. First, the tenant would require that the abandoned property be marketed specially and apart from the landlord's other commercial space inventory. Second, the landlord would be required to market the property at the original contract rental rather than its going market value. Under the facts as established in the record and according to the common law of this jurisdiction, we disagree.

The following facts appear in the trial court's findings and are undisputed by the parties. On September 18, 1994, United Retail, Inc., (the tenant) leased certain commercial property from Bellevue Group, the predecessors in interest to Bellevue Properties, LLC(the landlord). This commercial property was designated space 271, a 1500 square foot space in Bellevue Center, to be used as a " plus-sized" women's clothing store. The rent under the agreement was $15 per square foot per month. The term of the lease was 11 years ending September of 2005. The operative terms of the agreement, under Section 19.02 and the contract rider gave the landlord broad discretion as to the method of mitigation. These terms state:

> SECTION 19.02. RIGHT TO RELET. Should Landlord elect to re-enter, as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may either terminate this Lease or it

may from time to time, without terminating this Lease, make such alterations and repairs as may be necessary in order to relet the premises, and relet said premises or any part thereof for such term or terms (which may be for a term extending beyond the term of this Lease) and at such rental or rentals and upon such other terms and conditions as Landlord in its sole discretion may deem advisable.

. . .

If [] rentals [from reletting] and other sums received from such reletting during any month be less than that to be paid during that month by Tenant hereunder, Tenant shall pay such deficiency to Landlord; if such rentals and the sums shall be more, Tenant shall have no right to, and shall receive no credit for, the excess.  Such deficiency shall be calculated and paid monthly.  No such re-entry or taking possession of said premises by Landlord shall be construed as an election on its part to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

. . .

Landlord shall use reasonable efforts to relet the leased premises following termination of this Lease as a result of Tenant's default, provided Tenant acknowledges and agrees that Landlord may refuse to relet if Landlord determines that the proposed use or quality of the prospective tenant's operation is not then appropriate for the Shopping Center or if Landlord determines that the proposed rent is below market; in reletting, Landlord shall not be obligated to give preference to reletting the leased premises over other vacant space.[1]

On February 25, 1997, URI vacated space 271 and ceased paying rent, without notifying Bellevue, effectively abandoning the leased premises.[2]  After URI's abandonment, Bellevue through its agents made no special attempt to show space 271 to any potential lessors.  Instead, from February 1997 forward, Bellevue marketed all of its available space inventory, including space 271, equally from time to time and at trade shows.  This marketing included the offering of all available spaces in Bellevue Center for a rental ranging between $18 per square foot per month to $25 per square foot per month.  Despite these efforts, Bellevue found no prospective tenants for space 271 until January of 1998.  The only amount obtained by Bellevue mitigating the damages caused by URI's breach came in the amount of a license valued at $2400.  The chancellor awarded damages in the full amount of the delinquent rent, $61,853.18 minus the aforementioned $2400.  From this judgment the tenant appealed.

On appeal from the adverse ruling, URI alleges that Bellevue's efforts at mitigation are unreasonable as a matter of law.  In the alternative URI argues that the facts below preponderate against the Chancellor's finding that Bellevue acted reasonably in mitigation.  The latter argument

comes to us as a factual finding, subject to a presumption of correctness under Tenn. R. App. P. 13(d). The issue of law is reviewed without presumption. *Tenn. Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759 (Tenn. Ct. App. 1997).

It is well settled in this jurisdiction that upon abandonment by a tenant, the suffering landlord is required to mitigate the damages suffered. *See Jaffe v. Bolton,* 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991). This duty is to do "what is fair and reasonable under the circumstances to reduce [the landlord's] damages." *Nashland Associates v. Shumate,* 730 S.W.2d 332, at 333 (Tenn. Ct. App. 1987). The burden is on the breaching party to show a landlord's failure to so mitigate. *See Hailey v. Cunningham*, 654 S.W.2d 392, at 396 (Tenn. 1983). Admittedly, no Tennessee appellate court has drawn a bright line regarding the question of what constitutes "reasonable efforts to mitigate," presumably bowing to the fact-sensitive nature of the inquiry. This court has implicitly recognized that fact-sensitive nature most recently in the case of *Amberjack, Ltd., Inc., v. Thompson*. Said the Court:

> The trial court concluded that Nonconnah failed to do "whatever it had to in order to relieve Mr. Thompson." In *Nashland Associates v. Shumate*, 730 S.W.2d 332 (Tenn.App.1987), this Court stated that a landlord "must do what is fair and reasonable to reduce his damages." *Id.* at 333. Therefore, the trial court's finding overstates Nonconnah's duty to mitigate and exceeds the "fair and reasonable" standard established in *Nashland*.
>
> In this case, unrefuted testimony from Nonconnah's leasing agents established that TQM's space was shown to at least six potential tenants, and that advertisements for the office park as a whole regularly appeared in television, newspaper and radio.

*Amberjack, Ltd., Inc. v. Thompson*, No. 02A01-9512-CV-00281, 1997 WL 613676, at *7, (Tenn. Ct. App.) *perm. app. denied Apr. 6, 1998.* URI urges the position of unreasonableness as a matter of law, relying on a contract case from Illinois. *See MBC, Inc. v. Space Center Minnesota, Inc.* 177 Ill. App. 3d 226, 532 N.E.2d 255 (1988). URI also uses this authority for the proposition that, upon suffering breach, a landlord is required to offer the leased premises at the contract price rather than the going market rate. The common law of this jurisdiction does not compel a landlord to cap his lease offer at the rental given to the breaching tenant. The burden of proof is on the party guilty of the breach to establish that the landlord has failed to do what is "fair and reasonable" to mitigate his damages. *See Hailey v. Cunningham*, 654 S.W.2d 392, 396 (Tenn. 1983 and *Amberjack Ltd., Inc. v. Thompson*, 1997 Tenn. App. LEXIS 679 at 16-17. (Tenn. Ct. of App. Oct. 7, 1997). The rule of

*MBC* would represent a departure from this standard, and URI shows us no compelling reason to so depart. Requiring the landlord to give preference, and offer the premises at the contract price might satisfy a duty to "do whatever it had to do to relieve" the tenant of its responsibility, however, as the Court stated in *Amberjack*, such is not the standard.

The undisputed record below shows that the landlord attempted to relet the premises, that he had advertised these premises along with his other space inventory at regional trade shows, that the property in question was shown to four different prospective tenants, and that despite its reasonable efforts, the only taker was a licensee using the store front to advertise photography.

Under the authorities and for the reasons cited above, the judgment of the chancellor is affirmed in all respects. Costs on appeal are taxed against URI.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE