IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2008 Session

## LAWRENCE COUNTY v. GEORGE SHAFFER, ET UX, ET AL.

Appeal from the Chancery Court for Lawrence County
No. 12934-06     Stella L. Hargrove, Judge

No. M2007-01696-COA-R3-CV - Filed February 12, 2009

After Lawrence County landowners installed a gate across an unpaved rural road, the County filed
a declaratory judgment action to determine the rights of all the parties whose properties adjoined that
road, as well as the right of the County to remove the obstruction. The landowners who installed the
gate argued that the road had never been legally declared a county road and that the gate was
necessary to prevent their neighbors from trespassing on their property. After a hearing, the trial
court found (1) that the road was a county road and (2) that its entire length was contained in an
easement which no one was allowed to obstruct. The court accordingly ordered the landowners to
remove the gate. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which ANDY D. BENNETT
and RICHARD H. DINKINS, JJ., joined.

Robert D. Massey, Pulaski, Tennessee, for the appellants, George Shaffer and Pat Shaffer, et al.

Charles William Holt, Lawrenceburg, Tennessee, for the appellee, Lawrence County.

## OPINION

### I. A ROADWAY EASEMENT

In March of 1974, the heirs at law of Lottie Taylor sold George Shaffer and his wife Pat a
149 acre tract of farm property in Lawrence County. Ms. Taylor had owned the property and made
it her home until her death at the age of 79 on January 12, 1974. Access from the nearest paved road,

Brace Road, to her property and to other property owned by Ms. Taylor's children, was by way of an unpaved road called Jarel Lane.[1]

By prior arrangement, Ms. Taylor's heirs also conveyed a roadway easement to the Shaffers in April of 1974, said easement extending from Brace Road to the property they had purchased. The instrument of conveyance described the easement by metes and bounds, but it is undisputed that the roadway located within the easement is the aforesaid Jarel Lane. The conveyance declared the easement as ". . . the same being designated as a free and undisturbed roadway forever for said George W. Shaffer and wife, Pat Shaffer, their heirs, successors, and assigns forever without right in themselves or said heirs, successors and assigns in anywise to obstruct or stop up the same."

On August 12, 1985, the Shaffers purchased an additional 21 acre tract of land from W.I. Keeton and Ollie Keeton. Mr. Keeton was a son and heir of Lottie Taylor. On December 6 of the same year, the Shaffers purchased yet another tract from Thomas J. Lester and his wife Mello Jo Lester. That tract had once been owned by Lottie Taylor and had been purchased by the Lesters in 1977. It included land on both sides of the easement. The Lesters' warranty deed stated that their property contained "ten acres more or less including and excluding from this conveyance a roadway on the S side of this place."[2] The sale to the Shaffers of the almost four acres south of the roadway left the Lesters with 6.19 acres along its northern boundary. A house and three mobile homes were located on the property retained by the Lesters.

Unfortunately, the roadway proved to be a continuing point of friction between the Shaffers and the Lesters. George Shaffer complained that Ms. Lester's son-in-law sometimes left his eighteen wheel tractor-trailer parked on the road, thereby impeding traffic. The Lesters complained that Mr. Shaffer refused to allow them to build a fence along the boundary between the road and what they deemed to be their property. Mr. Shaffer had insisted that since the easement was forty feet wide, any fence built by the Lesters would have to be at least twenty feet from the center of Jarel Lane.

In December of 2005, Mr. Shaffer erected a gate ("the first gate") and a cattle guard across the road at a distance of about 410 feet from the intersection of Brace Road and Jarel Lane. He also built a fence along the northern side of the road beyond the first gate, extending an additional 131 feet to another gate ("the second gate") which leads into the 149 acre tract that he bought in 1974 from the heirs of Lottie Turner. Mr. Shaffer testified that he had maintained that second gate for more than twenty years.

---

[1] The proof showed that the unpaved road was also called Lottie Taylor Road and Brewer Road at different times, and that it was designated as Jarel Lane at about the time that 911 service was extended to that area of Lawrence County.

[2] Similarly, a 1959 deed from Lottie Taylor to her son Donald Taylor to land on both sides of the road specifically excluded the roadway from the conveyance.

The existence of the new gate and fence limited ingress and egress from the Lester property to Jarel Lane and made it nearly impossible for the Lesters' daughter and son-in-law, who lived on the end of the property beyond the first gate, to use their driveway. Ms. Lester was very indignant about Mr. Shaffer's installation of what she called "a spite fence," and on several occasions she cut the chain that Mr. Shaffer had placed on his gate.

## II. TRIAL PROCEEDINGS

On May 8, 2006, Lawrence County filed a Complaint for Declaratory Judgment. The Complaint named all the landowners whose property touched Jarel Road as defendants, asserted that Jarel Lane had been on the list of county roads since 1988, and asked the court for a declaration of the rights of the parties, including the right of the County to order the removal of the obstruction placed on Jarel Lane by the Shaffers.

The trial court filed a Restraining Order on May 15, 2006 in order to maintain the status quo. The court ordered that no fences or gates were to be taken down, cut, removed or destroyed until further orders of the court. A subsequent order, filed on May 23, 2006, directed the Shaffers to leave the first gate open until further orders of the court.

The hearing on the Complaint was conducted on October 16 and November 28, 2006. The County called Lawrence County Road Superintendent Donnie Joe Brown as its first witness. Mr. Brown testified that Jarel Lane was on the County Road list when he began his duties in 1998, and that the county had maintained it up to the area of the Lesters' driveway, which was also where the first gate was subsequently erected. He testified that the county could not do any maintenance beyond that point because the road was too narrow for its heavy equipment to turn around.

Mr. Brown had no personal knowledge as to exactly when Jarel Lane became a County Road. The earliest documentary evidence admitted into the record as to that question was in the form of the Minutes of the Lawrence County Quarterly Court of July 1988, approving a County Road List. Jarel Lane was included on that list, as well as on the lists approved in every subsequent year. The road was consistently described as being of chert, .1 miles in length, and running from Brace Road to a dead end.

The only other witnesses called to testify by the County were defendants Dean Taylor and Mello Jo Lester.[3] One corner of the Taylors' property abuts Jarel Road. Ms. Taylor testified that she lived on that property in 1954 and 1955, and that at that time the disputed road connected to Three Oaks Road. She stated "that road was maintained by the County when we lived there all the way to the creek; all the way to the creek. The grader came down that road."

---

[3]Dean Taylor is the wife of Lottie Taylor's son Donald Taylor, who was unable to attend the trial because of illness. Mello Jo Lester is the widow of Thomas J. Lester, who died in 1999.

Mello Jo Lester's testimony was consistent with that of Dean Taylor. She confirmed that Jarel Lane used to extend all the way to Three Oaks Road, and that "when we bought the property in 1977, the County maintained the road all the way to the creek." A topographic map published by the Tennessee Valley Authority and entered into the record shows the road reaching Brewer Branch, the creek referenced by both Ms. Taylor and Ms. Lester, at a point well beyond the locations of the first and second gates.

Mr. Shaffer testified that although the County did not maintain Jarel Lane past the first gate, he himself had spent a considerable amount of money to have that portion of the road cleared, graded and graveled. His testimony was confirmed by several contractors and laborers who worked on his property. He also complained that he had problems with trespassers, some of whom broke into the house where Lottie Taylor (who he referred to as "Aunt Lottie") had formerly lived, and stolen property from it.[4] Mr. Shaffer insisted that the property he bought from the Lesters included both sides of Jarel Lane, and that he was therefore entitled to place a fence between their property and the road. He also testified that he had never been notified of the County's intention to make Jarel Lane a County Road.

At the conclusion of testimony, the court took the case under advisement, and the judge subsequently went on the subject property to obtain a view of it. On March 26, 2007, the court filed an order containing findings of fact and conclusions of law. The court found that Jarel Lane had been a County Road since 1988 and that the roadway easement "is considerably longer that the 1/10 mile Jarel Lane as the longer easement was originally needed to gain access to the first tract of property bought by the Shaffers." Most significant for our review, the court further found that Lottie Taylor had never conveyed away the underlying fee to the roadway, and thus that the Lesters could not have conveyed it to the Shaffers. In accordance with its findings, the court ordered the Shaffers to remove the gate, the cattle gap and the fence along the Lester property and to restore the road. This appeal followed.

### III. ANALYSIS

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of the correctness of the finding, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The court's conclusions of law are likewise reviewed *de novo*, but without a presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993); *Tennessee Farmers Mutual Ins. Co. v. Moore,* 958 S.W.2d 759, 763 (Tenn. Ct. App. 1997).

---

[4]Mr. Shaffer testified that he had grown up in Lawrence County, but moved to Texas in 1959. He continued to reside in Texas after he bought Lottie Taylor's farm, coming back to Lawrence County once or twice a year and staying for months at a time, to inspect his property and arrange for improvements to be made on it.

The Shaffers argue on appeal that the trial court erred in finding that Jarel Lane was a County Road. They rely on Chapter 10 of Title 54 of Tennessee Code Annotated, which sets out the criteria and procedures for the establishment of public roads, and they cite in particular Tenn. Code Ann. § 54-10-202, which states:

> No road shall be opened, changed, or closed without giving at least five (5) days' notice to all parties interested at the time the road or roads are to be opened, changed, or closed, and a surveyor or civil engineer may be employed, if necessary, to locate the same. Landowners and those controlling land touched by the proposed highway shall be deemed interested parties.

George Shaffer testified that he did not receive notice at any time that Lawrence County intended to make Jarel Lane a County Road. Further, Joe Brown testified that he did not know whether or not the county complied with the notification statute. The Shaffers accordingly argue that the County's 1988 approval of the County Road list was not effective to transform that road into a County Road. In the alternative, the Shaffers argue that the County abandoned that portion of Jarel Lane beyond the first gate by failing to maintain it.[5]

Even if, *arguendo*, we accepted either of the arguments presented by the Shaffers as correct, they would still be barred from obstructing Jarel Lane under the explicit terms of the Easement for Roadway executed in 1974, which granted them and their heirs, successors, and assigns "a free and undisturbed roadway forever" but without the right "in anywise to obstruct or stop up the same." The gate and cattle guard across the roadway clearly amounted to obstructions, and the trial court did not err in ordering them removed.

Further, when we examine the Shaffers' chain of title, we find that their property is not quite as extensive as they wish to claim. The 1977 warranty deed by which the Lesters obtained ownership over the land later sold to the Shaffers described the property as ". . . containing ten acres more or less including and excluding from this conveyance a roadway on the S side of this place." We can determine the meaning of this apparently contradictory language by applying the familiar rule of construction which requires us to read the deed as a whole in order to ascertain the intention of the grantor. *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Hodge v. Cornelison*, 159 S.W.3d 32, 39 (Tenn. Ct. App. 2004). The above language is at the tail end of a long sentence describing the boundaries of the property, which clearly indicates that those boundaries enclose a portion of the road. Thus, the only reasonable interpretation of that language is that although part of Jarel Lane is "included" within those boundaries, it is "excluded" as a part of the conveyance. Such an

---

[5]A determination as to whether Jarel Lane is a county road may have some far-reaching implications. Tenn. Code Ann. § 54-10-110 makes it a Class C misdemeanor to obstruct a public road or encroach upon it by "constructing any wall, fence, or like improvement." On the other hand, Tenn. Code Ann. § 54-10-108 states that "[c]ounty legislative bodies are empowered to permit the erection of gates across public roads of the third and fourth class when, in their judgment, it will be manifestly to the advantage of the applicant and not materially to the prejudice of the public."

interpretation is consistent with the trial court's finding that Lottie Taylor never conveyed the underlying fee to the roadway.[6]

It is axiomatic that you cannot convey an estate greater than the one you received. *Conatser v. Ball*, No. M1999-00583-COA-R3-CV, 2001 WL 873457 at *4 (Tenn. Ct. App. Aug. 3, 2001)(no Tenn. R. App. P. 11 application filed). "A deed which purports to convey a greater estate than the grantor has will be void only as to the excess and will be construed as a conveyance of that which it was in his power to convey." *Wilson v. Ward*, No. E2001-02177-COA-R3-CV, 2003 WL 1626887 (Tenn. Ct. App. March 24, 2003) (no Tenn. R. App. P. 11 application filed) (quoting *Sloan v. Sloan*, 184 S.W.2d 391, 392 (Tenn. 1945). It follows that the Lesters could not convey an ownership interest in the roadway to the Shaffers even if they had wanted to. But, their deed to the Shaffers demonstrates an opposite intention, for it states that it includes "all property that lies to the right of the above described roadway and easement formerly conveyed to George Shaffer and wife Pat Shaffer..." Thus, the Shaffers only obtained property on one side of the roadway, and therefore had no right to install a fence on the other side. We accordingly affirm the trial court's order that the fence be removed.

## IV.

The order of the trial court is affirmed. We remand this case to the Chancery Court of Lawrence County for any further proceedings necessary. Tax the costs on appeal to the appellants, George and Pat Shaffer.

_____
PATRICIA J. COTTRELL, P.J., M.S.

---

[6]This conclusion is reinforced by the following language from the 1959 deed by which Lottie Taylor conveyed land adjoining the road to her son Donald Taylor: ". . . but there is included in this description but excluded from this conveyance, roads and rights-of-way for roads as now located and as may hereafter need to be widened and improved but said roads are expressly reserved to the grantor and her heirs and assigns for the use and benefit of grantor, her heirs and assigns."