IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## JANET ARWOOD SARTAIN, ET AL.  v.  JOHN ROSS SARTAIN,

**Tenn. R. App. 3 Appeal from the Chancery Court for Jefferson County**
**No. 93-201    Hon. T. E. Fogerty, Jr., Chancellor**

---

**No. E1999-00556-COA-R3-CV - Decided May 4, 2000**

---

Janet Arwood Sartain, Plaintiff/Appellee, filed suit for divorce against John Ross Sartain, Defendant/Appellant, on October 7, 1993.  Appellant filed a "Motion to Alter or Amend Judgment, and For Judgment for the Value of Clothes and Tools" in that case.  The Trial Court ordered that the divorce Judgment be amended to correct a clerical error which also corrected the Judgment as to the settlement of the marital estate.  The Trial Court denied Appellant's motion for post-judgment interest and his request for judgment in the sum of $15,000.00 for tools and clothing.  He appeals the Trial Court's refusal to award interest and refusal to grant judgment for tools and clothing.  For the reasons herein stated, we affirm the Judgment of the Trial Court.

**Tenn. R. App. 3; Judgment Affirmed and Remanded**

SWINEY, J., delivered the opinion of the court, in which GODDARD, P.J., and Susano, J., joined.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellant, John Ross Sartain.

P. Richard Talley, Dandridge, Tennessee, for the appellee, Janet Arwood Sartain.

### OPINION

#### Background

Much of the protracted history of this divorce case is set out in the Opinion of this Court in *Sartain v. Sartain,* No. 03A01-9707-CH-00297, filed October 29, 1998. During the pendency of the divorce action in the Trial Court, that Court ordered the marital home sold at auction, and the sale was accomplished in 1996. The Trial Court by order of July 7, 1997 held that John Sartain was entitled to $40,324.27 and Janet Arwood Sartain was entitled to $33,680.26 from the sale of the parties' marital home and division of the marital assets. Janet Sartain's parents, Ruble and Carolyn Arwood, were found to be entitled to $38,411.84 from the sale, for reasons explained below.

This Court then entertained John Sartain's appeal on four issues related to that division of marital property. On June 8, 1998, while that appeal was pending, John Sartain filed in

the Trial Court a "Motion to Enforce Judgment," asserting that the Trial Court's "Judgment Confirming Sale" of the parties' marital home had been entered on November 25, 1996 and that the proceeds of the sale had not been paid into the Court within thirty days after the date of the sale as the Trial Court had ordered. Mr. Sartain sought statutory interest from November 11, 1996, which was thirty days after the sale, "until the funds have been paid into the Clerk's office."

Janet Arwood Sartain's parents, Ruble and Carolyn Arwood, were parties in the divorce action due to their contributions to and interest in the couple's marital home. The Arwoods also purchased the marital home when it was auctioned by the Trial Court. Since the Arwoods and their daughter were entitled to a substantial portion (nearly two-thirds) of the funds from the sale of the marital home, they sought through counsel to reach an agreement with Mr. Sartain whereby they could deposit into the Court only the amount Mr. Sartain actually was entitled to receive.[1] Without that agreement, the Arwoods would have been forced to mortgage the property to, in effect, pay themselves their portion of the funds due from the sale. Counsel for the Arwoods and then-counsel for Mr. Sartain apparently reached such an agreement to permit the deposit into the Trial Court of only those funds actually owed to Mr. Sartain and not in dispute, and the Trial Judge apparently agreed to enter such an Order, but Mr. Sartain then disavowed the agreement and fired his attorney before the Order was filed.

The Arwoods responded to John Sartain's "Motion to Enforce Judgment," explaining that they had paid the sum owed Mr. Sartain to the Clerk & Master in the form of two checks: (1) $41,766.00 on the principal owed, check # 1192 dated June 20, 1997, and (2) $1,386.99 *for accrued interest*, check # 1206, dated June 24, 1997. The Clerk held the two checks for eight months but could not deposit them because no Order directing the distribution of the funds had been filed with the Court. We quote from the Arwood's Response to Mr. Sartain's Motion To Enforce Judgment:

> Defendant Arwood tendered to the Court two checks for the Defendant's [Mr. Sartain's] share plus interest. An Order was prepared, a copy of which is attached as Exhibit "A", whereby the sum of money in dispute would not be paid into the Court. Defendant instead was to receive a trust deed securing the amount in dispute. This agreement between counsel for Plaintiff and Defendant was announced before C. S. Rainwater, Jr., and approved. Before the Order could be entered, Defendant discharged Mr. Strand from representation. Thereafter, the Clerk and Master returned the two checks to Defendant Arwood. Copies of the two check are attached as Exhibit "B".

After considering Mr. Sartain's Motion to Enforce Judgment and the Response, on September 4, 1998, the Trial Court entered an Order finding that

---

[1]It appears the Trial Court and the parties did not anticipate that the Arwoods would purchase the home at auction when the Court ordered that all funds from the sale be deposited with the Court.

. . . certain issues subject to the Motion to Enforce Judgment are currently on appeal. Therefore the Court finds that it does not have jurisdiction to decide this Motion. As to the other issues raised in the Motion, the Court finds that those issues should be reserved pending final appellate resolution of this case.

Based on the foregoing findings, the Trial Court declined to rule on the Motion to Enforce Judgment and reserved its ruling "pending final appellate resolution." On October 29, 1998, this Court filed its Opinion in Mr. Sartain's appeal of the original divorce judgment, in which we affirmed the Judgment of the Trial Court.

On May 5, 1999, the Trial Court held another hearing "upon the Motion of John Ross Sartain for post-judgment interest on sale proceeds involving certain marital assets, upon the request for the return of some tools and clothing . . . ." After considering the testimony of witnesses, arguments of counsel and "the entire record in this cause," the Trial Court found "that the Motion for interest should be **DENIED** . . . ." The Trial Court also ordered that the parties should "set a date certain for Mr. Sartain to pick up his tools and clothing from the marital home." The Court then found that the case had been "lingering on the Court's docket for a number of years" and made specific findings of fact which summarized the financial aspects of the distribution of marital assets in the divorce. However, that Order did not correctly memorialize the Trial Court's division of the marital assets.

On May 18, 1999, Mr. Sartain filed a new motion, styled "Motion to Alter or Amend Judgment and For Judgment For the Value of Clothes and Tools" in the Trial Court. In that motion, Mr. Sartain complained about an error in the asset distribution portion of the Trial Court's Order of May 5, 1999, and also raised again the issue of the failure of the Trial Court to award post-judgment interest on the sale proceeds of the marital assets. He also averred that he had appeared at the marital home, as ordered by the Trial Court, to pick up his tools and clothes, but apparently had not received all that he sought, and asked the Trial Court to award him judgment for $15,000 "for the loss, destruction or conversion of his tools and clothing."

The Trial Court held a hearing on Mr. Sartain's "Motion to Alter or Amend Judgment and For Judgment For the Value of Clothes and Tools" on May 25, 1999. Pursuant to that hearing, the Trial Court entered Judgment on June 7, 1999. The Court found that a clerical error appeared in its Judgment of May 5, 1999, and amended that Judgment, thus correcting the error in the Court's prior Order for distribution of marital assets. The Trial Court then found:

> that the request of John Ross Sartain for interest shall be **DENIED** as there is no Order directing the Clerk and Master to deposit any money in an interest bearing account.
>
> The Court further finds that the request of John Ross Sartain for a judgment of $15,000 for tools and clothing shall be **DENIED** without allowing proof, as that matter is res judicata.

In this appeal, Mr. Sartain asserts that it was error for the Trial Court to refuse post-judgment interest on the proceeds of the sale of the marital home and to deny him judgment of $15,000 for tools and clothing.

## Discussion

Our review is *de novo* upon the record of the Trial Court, T.R.A.P. Rule 13(d). The Trial Court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against those findings. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999).

As stated, Appellant raises two issues, which we quote:

1.      Whether the Chancellor erred in not granting judgment for interest on the amount that was ordered paid into court as a result of the purchase of the property.

2.      Whether the Court erred in ruling that the request for judgment for the value of clothes, tools, and other items, or the return of those clothes, tools, and other items, was res judicata and could not be considered at the time of the hearing?

Mr. Sartain first argues that he is entitled to his share of interest at the rate of ten percent on 90% of the purchase price of the marital home and other marital assets from November 25, 1996 (30 days after the date of sale), until the date he actually received his share of the proceeds of the sale from the Clerk and Master of the Trial Court. His share of the proceeds was finally determined, on June 7, 1999, after much effort by the parties and the Trial Court, to be $44,059.29. Mr. Sartain bases his claim for interest on T.C.A. § 47-14-121, which provides:

> **T.C.A. § 47-14-121.  Interest on judgments - Rate. -** Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; provided, that where a judgment is based on a note, contract or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed.

In interpreting T.C.A. § 47-14-121, this Court has held:

> Thus, when a judgment is rendered in the trial court originally or by direction from the appellate courts, the statute provides that the judgment shall automatically accrue interest at the statutory rate unless the court specifies that "its action requires that interest be computed other than as required by statute."

*Inman v. Alexander,* 871 S.W.2d 153, 154 (Tenn. Ct. App. 1993), citing *Inman v. Inman,* 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992).

However, T.C.A. § 47-14-121 does not come into play until "a judgment is rendered in the trial court originally or by direction from the appellate courts," *Inman v. Alexander,* 871 S.W.2d at 154. While Mr. Sartain contends that the Trial Court entered a judgment on November 25, 1996, from which he is entitled to post-judgment interest, the record before us does not include any such judgment. Moreover, counsel for Appellee argued before this Court at oral argument that "the Order to Confirm the Sale was never signed," while counsel for Appellant argued that the Order *was* entered. If so, Appellant had the burden to include that Order in the record on appeal. Appellant's brief in this Court, page 10, states that "[h]ere the triggering event was the Order of Confirmation of Sale which adopted the Master's Report and was entered on November 25, 1996 [present T.R. 106]."[2] However, there is no page 106 of the record before us, which consists of only one volume, with pages numbered 1 - 56. Since the Order is not part of the record on appeal, we cannot consider it. T.R.A.P. Rule 13(c); *Tennessee Farmers Mut. Ins. Co. v. Moore,* 958 S.W.2d 759, 767 (Tenn. Ct. App. 1997).

The record before us does contain an Order of July 7, 1997, in which the Trial Court ordered, among other things, that the Clerk and Master distribute to Mr. Sartain $40,324.27 from the proceeds of the sale of the marital assets. The Clerk and Master had in her possession at that time two checks from the Arwoods, as stated, for $41,766.08 and accrued interest of $1,386.99. However, the Clerk and Master was unable to make distribution by reason of Mr. Sartain's disavowal of the proposed agreed order specifying the manner of such payment and his dismissal of his then-counsel. Clearly, the Arwoods had done all in their power at that time to pay Mr. Sartain the amount owed plus interest accrued at that time. Mr. Sartain, having refused to permit his attorney to file the agreed Order, then fired his attorney and apparently took no steps to retain other counsel or otherwise remedy the situation until nearly a year later, on June 8, 1998, when he filed the Motion to Enforce Judgment.

The Trial Court properly declined to rule on Mr. Sartain's Motion to Enforce Judgment at that time because the case was then "pending final appellate resolution" in this Court. That appeal was resolved in favor of Janet Sartain on all issues by our Opinion filed October 29, 1998. The Trial Court then held another hearing, attempting once again to finalize the settlement of the marital estate by determining the exact amounts due to the parties, considering the October 1998 Opinion of this Court, the costs of advertising and selling the marital home which had not been calculated earlier, the court costs and other expenses.

---

[2]We also note that Appellant's brief in this Court, page 5, states: "The Court entered an Order on the 25th day of November, 1996, affirming the above-referenced sale of the property in the terms of that sale, being ten percent (10%) paid the date of the bid and the remainder to be paid within thirty days thereafter, after the date of closing. [previous T.R. 106], attached hereto and marked as Appendix "A"." However, Appendix A to Appellant's brief is a copy of an earlier Judgment filed January 6, 1995, before the marital home was sold.

Pursuant to the hearing of May 5, 1999, the Trial Court ordered that "the Clerk shall issue a check to John Ross Sartain and his attorney, Carl R. Ogle, Jr., in the sum of $40,309.27." However, as stated, Mr. Sartain then filed a "Motion to Alter or Amend Judgment, and for Judgment for the Value of Clothes and Tools" on May 18, 1999. This motion necessitated another hearing in the Trial Court, which resulted in an Order of June 7, 1999, which corrected the May 5, 1999 Order as to the distribution of marital assets. That Order provided that "The Clerk and Master shall immediately issue a check in the amount of $44,059.29 to John Ross Sartain and shall also immediately deliver to Ruble and Carolyn Arwood the Clerk and Master's Deed." In any event, the record shows that the Trial Court's final judgment awarding Mr. Sartain his share of the proceeds from the sale of marital assets was not entered in the Trial Court until June 7, 1999. It is this June 7, 1999 judgment that triggers T.C.A. § 47-14-121.

Mr. Sartain seeks, alternatively, "pre-judgment interest (at least interest which should have accrued prior to the time that it was actually paid into Court) as contemplated by T.C.A. § 47-14-123." That statute provides:

> **T.C.A. § 47-14-123. Prejudgment interest. -** Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

In applying this statute, our Supreme Court has held:

> Pursuant to Tenn. Code Ann. § 47-14-123, prejudgment interest may be awarded in accordance with the principles of equity. In reaching an equitable decision, a court must keep in mind that the purpose of prejudgment interest is to fully compensate a plaintiff for the loss of the use of funds, not to penalize a defendant. Moreover, if a plaintiff's right to recovery and the amount of such recovery are not disputed on reasonable grounds, an award of prejudgment interest is more likely to be equitable.

*Alexander v. Inman,* 974 S.W.2d 689, 697-98 (Tenn. 1998), quoting *Myint v. Allstate Insurance Co.,* 970 S.W.2d 920 (Tenn. 1998).

In this case, the amount of Mr. Sartain's recovery was disputed from the date the

divorce complaint was filed in 1994 until the date of the final judgment on June 7, 1999. The Arwoods had attempted to pay into the Clerk and Master the amount of money they believed was owed to Mr. Sartain, and did so long before the final judgment of June 7, 1999. Under these circumstances, we find the Trial Court's failure to award pre-judgment interest was not error.

Mr. Sartain also raises the issue of the Trial Court's refusal to award him judgment for the "loss, destruction or conversion of his tools and clothing" in the amount of $15,000. This Court has previously affirmed the Trial Court's disposition of Mr. Sartain's personal property. The Opinion of this Court in *Sartain v. Sartain,* No. 03A01-9707-CH-00297, filed Oct. 29, 1998, contains the following findings of fact on this issue:

> On March 15, 1996, Mr. Sartain filed a motion to set aside the judgment of the Trial Court because he had not been granted access to the family home in order to remove his personal effects. . . .

> In a hearing before the Trial Court on April 8, 1996, the Court granted Ms. Sartain exclusive possession of the marital home. Ms. Sartain agreed, as she had on previous occasions, to set a time for Mr. Sartain to pick up some personal items. On previous occasions, Mr. Sartain had failed to arrive to pick up his goods or had failed to remain civil to Ms. Sartain. Mr. Sartain refused to set a time to pick up his personal items. The Trial Court ordered the judicial sale of the marital home . . . .

> On October 12, 1996, the marital home was sold at a public sale to Ms. Sartain's father for the sum of $131,000. Furthermore, all personal property unique to the home was sold for $12,448. (fn1. This phrase [unique to the home] is used to denote personal property in the home which had not been divided by the parties.)

> * * *

> . . . The facts of the case show that Mr. Sartain was scheduled to have access to the house on two separate occasions to remove his personal property. He failed to appear to collect his belongings on the first occasion. On the second he verbally threatened Ms. Sartain. Mr. Sartain failed to take steps through the Trial Court to be granted access to the family home on any other occasions, and failed to make use of the occasions on which he was granted access. . . .

> The judgment of the Trial Court is affirmed . . . .

We glean from the findings of fact of this Court in the prior appeal that access to Mr. Sartain's personal property had been offered to him on several occasions. Mr. Sartain had obstructed

the Trial Court's efforts to secure a satisfactory settlement by failing to appear and by verbally threatening Mrs. Sartain. This Court affirmed the Judgment of the Trial Court in all respects by our Opinion of October 29, 1998, and there the matter ends. *Res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit. *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998). Furthermore, it matters not whether the attempted relitigation of this issue by Mr. Sartain is in the same suit or a second suit because ". . .when an issue has been finally determined, the principle of *res adjudicata* prevents a relitigation of that issue whether in the same or in an independent suit." *Hicks v. Hicks*, 176 S.W. 2d 371, 374 (Tenn. Ct. App. 1943)

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, John Ross Sartain.