# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 8, 2007 Session

## LOUIS ERNEST CUNNINGHAM v. CHERYL LYNNE CHEATHAM CUNNINGHAM

**Direct Appeal from the Chancery Court for Madison County**
**No. 53334      Allen W. Wallace, Judge Sitting by Designation**

_____

**No. W2006-02685-COA-R3-CV - Filed June 25, 2008**

_____

In this domestic dispute, Father appeals contending that the trial court erred in its retroactive treatment of child support and rehabilitative alimony, the assessment of interest, the accounting of payments made by Father to Mother, denying Father's requested modification of his child support and alimony obligation, denying his requested modification of the parenting schedule and awarding attorney's fees to Mother. We affirm in part and reverse in part and remand the case to the trial court for recalculation of the statutory interest and arrearages and a redetermination of whether the facts in the case support an upward deviation from the Child Support Guidelines.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined. W. Frank Crawford, J., not participating.

Rachel Emily Putnam, Kay Farese Turner, Memphis, Tennessee and Jerry Charles Cox, Jackson, Tennessee, for the appellant, Louis Ernest Cunningham.

C. Timothy Crocker, Michael A. Carter and Daniel E. King, Milan, Tennessee, for the appellee, Cheryl Lynne Cheatham Cunningham.

## OPINION

### Facts and Procedural History

This is a divorce case with significant appellate history. *See Cunningham v. Cunningham*, No. W2002-02296-COA-R3-CV, 2004 WL 57088, at *1 (Tenn. Ct. App. Jan. 9, 2004) *perm. app. denied* (June 21, 2004) (hereinafter, "Cunningham II"); *Cunningham v. Cunningham*, No. W1999-02054-COA-R3-CV, 2000 WL 33191364, at *1 (Tenn. Ct. App. Oct. 20, 2000) (*no perm. app. filed*)

(hereinafter, "Cunningham I"). The underlying facts and pertinent procedural history set forth in our previous opinions are restated below:

> Cheryl Lynne Cheatham Cunningham [Mother] and Louis Ernest Cunningham [Father] were married in October 1990 and separated in July 1995. In 1999, the trial court awarded [Mother] a divorce on the grounds of inappropriate marital conduct. The court valued [Father]'s medical practice, the Mid-South Heart Center, at $1,300,000; divided the marital property, with the marital residence awarded to [Mother]; and awarded [Mother] alimony *in solido* of $450,000 and rehabilitative alimony of $6,000 per month for seven years. The trial court awarded the parties joint custody of their minor child, with the primary residence being with [Mother]. The court ordered [Father] to pay child support of $6,200 per month based upon a net income of $52,000 per month, and to pay $4,486 per month into a college educational trust. The trial court refused to grant a downward deviation from the child support guidelines. The court further ordered [Father] to maintain a life insurance policy of $900,000 for as long as he has any child support obligation. [Father] appealed the entire judgment to this Court.

> On appeal, we determined in Cunningham I that the preponderance of the evidence did not support the trial court's finding that the value of the Mid-South Heart Center was $1,300,000. In so holding, we held that the professional goodwill of [Father]'s practice is not a marital asset to be considered in making an equitable distribution of the marital estate. We therefore reversed this valuation, and remanded the issue to the trial court for an assignment of value between $546,710 and $624,864, the range supported by the evidence. Because the court must consider the value of [Father]'s medical practice in determining an equitable division of property and award of alimony, we accordingly also remanded these issues to the trial court for reconsideration in light of the revaluation of the Mid-South Heart Center.

> In *Cunningham I*, we also held the trial court had not improperly determined the child support award. However, we remanded for reconsideration of whether a downward deviation from the guidelines was warranted in light of a presumption that [Father] was exercising the 160 days of visitation awarded to him. In so doing, we instructed the trial court to make written findings on this issue. We further determined that, at trial, [Father] had waived the issue of the establishment of an educational trust, and we therefore declined to address the issue on appeal. We also held that the trial court had not abused its discretion in ordering [Father] to maintain a life insurance policy to secure his child support obligation, but remanded the issue for reconsideration of the amount based on a potential redetermination of [Father]'s child support obligation.

On remand, the trial court revalued the Mid-South Heart Center at $585,787. It reduced the award to [Mother] of alimony *in solido* from $450,000 to $400,000, and reduced the rehabilitative alimony award from $6,000 per month for seven years to $5,500 per month for seven years. The trial court made no change in the division of marital property, and ordered [Father] to refinance the marital home. The trial court declined [Father]'s request for a downward deviation from the child support guidelines, and accordingly reaffirmed its order that [Father] maintain a life insurance policy of $900,000 for the duration of the child support obligation. [Father] again appeals to this Court.

Cunningham II, 2004 WL 57088, at *1.

This Court affirmed the trial court's decisions in *Cunningham II. Id.* at *5. On remand, the trial court made a ruling regarding all the pending matters. As stated in its September 11, 2006 Order, the trial court's rulings are as follows:

This cause came on to be heard on November 24, 2003, November 4, 2004, September 12, 2005, and March 3, 2006, before the Honorable Allen Wallace, upon the following pleadings and amendments to the same:

(a) Motion for Civil Contempt filed by the Defendant, Cheryl Lynne Cheatham Cunningham [hereinafter referred to as "Mother"] on January 9, 2003.

(b) Motion for Civil Contempt filed by Mother on April 30, 2003.

(c) Motion for Contempt filed by the Plaintiff, Louis Ernest Cunningham [hereinafter referred to as "Father"] on April 21, 2003.

(d) Motion to Modify Primary Residential Parent and Child Support filed by Father on April 17, 2003.

(e) Motion to Modify Rehabilitative Alimony filed by Father on November 10, 2005.

. . . .

IT IS THEREFORE ORDERED:

1. That Father is in arrears in the payment of child support for 51 months at $1,525.00 per month, for a total of $77,775.00. Said sum shall be paid with 12% interest pursuant to T.C.A. § 36-5-101(f)(1) from December 3, 2002 through March 31, 2003, in the amount of $1,560.52, for a total of $79,335.52. Said sum is payable upon entry of this Order. Mother is granted a judgment for said sum, for which execution may issue.

-3-

2.  That Father failed to establish the educational trust fund as Ordered. Father owes for 81 months at $4,486.00 per month, for a total of $363,366.00, from January 20, 1999, through and including September 1, 2005.  Father shall pay said sum into the educational trust fund, plus any other sum required to bring him in compliance with the Court's Order, within ninety (90) days of entry of this Order.

3.  That Father shall furnish Mother proof of monthly deposits to the educational trust fund.  Father shall execute such documents as are necessary to give Mother access to the account information on said fund.  Further, Father shall direct the financial institution to direct a copy of all financial documents generated on or in connection with said account to Mother.

4.  That Father is in arrears in alimony.  Father owes Mother for 48 months at $5,500.00 per month, for a total of $264,000.00, through and including December 31, 2002.  Mother is granted a judgment for said sum, for which execution may issue. [The following was added to this paragraph by Order on December 6, 2006.] The Plaintiff shall be credited with any payments made as rehabilitative alimony after December 31, 2005, against a total of $264,000.00 which he owed as of December 31, 2005.

5.  That Father owes Mother interest on the payments of alimony *in solido*, which were not paid as ordered, in the amount of $10,671.32.  Mother is granted a judgment for said sum, for which execution may issue.

6.  That Father owes Mother the sum of $8,852.85 for unpaid medical expenses, through and including October 14, 2004.  Mother owes Father the sum of $1,163.00 for unpaid medical expenses, for which Father shall receive credit.  Father shall pay to Mother the sum of $7,689.85.  Mother is granted judgment for said sum, for which execution may issue.

7.  That Father owes Mother the sum of $59,000.00, plus interest of $54,234.39 for other assets he failed to transfer to Mother.  Father shall pay Mother the sum of $110,234.39.  Mother is granted a judgment for said sum, for which execution may issue.

8.  That Father owes Mother $34,358.76 for profit sharing accounts which he failed to transfer to Mother.  Said transfer shall be accomplished by transfer of said sum from Father's profit sharing account by means of a Qualified Domestic Relations Order, including interest and earnings on said amount since January 20, 1999.

9.  That Father shall furnish Mother with proof of his life insurance policy coverage, including face amount and beneficiary designation as requested by Mother.

10.  That Father shall pay the sum of $10,739.49 to Mother's attorneys of record, Middlebrooks & Gray, P.A.  Mother is granted a judgment for said sum. Execution may issue at the request of Mother or her attorneys.

11. That Father's Motion to Modify the Primary Residential Parent is denied.

12. That Father's Motion for Contempt is denied.

13. That Father's Motion to Modify child support is denied.

14. That Father's Motion to Modify alimony is denied.

15. That Father shall pay the costs of this cause, for which execution may issue.

16. That this Order resolves all pending Motions before this Court, and constitutes a final order in this cause.

### *Issues*

Appellant raises six (6) issues, as stated in his brief:

1. Did the Trial Court err in making the amount of child support and rehabilitative alimony awarded in the Trial Court's Order on Remand retroactive to January 1999?

2. Did the Trial Court err in assessing interest from the entry of the original decree in January 1999 forward on the Alimony *in Solido*, division of bank accounts, and division of retirement accounts, which were not awarded to [Mother] until the Order on Remand was entered in by the Trial Court in September 2002?

3. Did the Trial Court err in the accounting of the payments made by the Appellant to [Mother] following he entry of the Order on Remand?

4. Did the Trial Court err in denying Father's requested modification of his child support obligation and rehabilitative alimony obligation?

5. Did the Trial Court err in denying Father's requested modification of the parenting schedule?

6. Did the Trial Court err in awarding attorney fees to [Mother]?

## *Standard of Review*

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). The trial court's factual findings are presumed to be correct, and we must affirm such findings unless the evidence preponderates against the trial court's finding. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). In matters of support, child custody, visitation and related issues, trial courts are given broad discretion; as such, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. *Parker v. Parker,* 986 S.W.2d 557, 563 (Tenn. 1999); *Hoalcraft v. Smithson,* 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999).

We further note that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. App. 1997).

## *Discussion*

We have organized our discussion of the issues into what we perceive to be the most efficient manner. First, Father complains that the trial court's oral bench ruling on March 6, 2006, is inconsistent with the trial court's written Order of September 11, 2006.

We note that "the court speaks through its order, not through the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). The law of Tennessee is well-settled on this issue:

> "A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days."

*Broadway Motor Co., Inc. v. Fire Insurance Co.,* 12 Tenn. App. 278, 280 (1930).

This rule survived the adoption of the Tennessee Rules of Civil Procedure. *Sparkle Laundry and Cleaners, Inc. v. Kelton,* 595 S.W.2d 88, 93 (Tenn. App. 1979); *Evans v. Perkey,* 647 S.W.2d 636, 641 (Tenn. App. 1982).

As observed by the Court of Appeals for the Western Section: "We do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a Court speaks." *Shelby v. Shelby,* 696 S.W.2d 360, 361 (Tenn. App. 1985).

*BVT Lebanon Shopping Center, LTD v. Wal-Mart Stores, Inc.*, No. 01-A-01-9710-CV-00607, 1999 WL 236273, at *2 (Tenn. Ct. App. Apr. 23, 1999).

This Court recognizes the marked discrepancy between the written findings of fact and the trial court's oral findings in the transcript. Although puzzling in result, the only conclusion to be drawn from the difference is that the trial court changed its mind. This is further supported by the fact that the trial court declined to alter the Order when Father filed a Motion to Alter or Amend.

Under the foregoing authority, the findings of fact and conclusions of law reflected by the September 11, 2006, Order are the only findings of fact and conclusions of law of the trial court. They alone are reviewable on appeal under Rule 13(d) of the Rules of Appellate Procedure with presumption of correctness, unless the evidence preponderates to the contrary. *Foster v. Bue,* 749 S.W.2d 736, 741 (Tenn. 1988). The conclusions of law drawn by the trial court are reviewable *de novo* on appeal without a presumption of correctness. *Tennessee Farmers Mut. Ins. Co. v. Moore,* 958 S.W.2d 759, 763 (Tenn. App. 1997).

Next, we address the combined issues of whether the trial court erred in making the child support and rehabilitative alimony retroactive to January 20, 1999, the date of the original divorce decree, and whether the trial court erred in assessing interest from the entry of the original decree forward on the alimony *in solido*, division of bank accounts, and division of retirement accounts.[1] Father contends that these awarded amounts were not final until the Order on Remand was entered by the trial court on September 25, 2002. Thus, he contends that he should not be obligated to pay arrearages and interest accruals for the time period prior to the September 25, 2002 Order. Father argues that, because this Court reversed and remanded the trial court's original Order for Absolute Divorce in *Cunningham I*, the parties' property division and Mother's alimony and child support awards were not effective as of January 2, 1999.

Mother contends that the law supports the trial court's retroactive application, citing *Gotten v. Gotten*, 748 S.W.2d 430 (Tenn. Ct. App. 1987). She argues that this Court's reversal of the trial court's judgment providing for periodic payments of alimony or child support is effective as of the date of the original trial court judgment, unless the appellate court provides otherwise.

---

[1] T.C.A. § 47-14-122 provides:

Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

In *Gotten*, this Court stated:

[A] decision of an appellate court modifying or reversing a trial court decision is given retroactive effect to the day of the original judgment.

. . . . The appellate court acts only upon the record in the case in the trial court and when the appellate court enters an order modifying the trial court order it is doing what should have been done in the first instance. The modification of the trial court order should be effective as of the date of the trial court order. Therefore, we hold that a judgment of the appellate court reversing or modifying the trial court judgment providing for periodic payments of alimony or child support is effective as of the date of the trial court judgment, unless the appellate court judgment specifies otherwise. Therefore, the judgment of the trial court refusing to require Husband to reimburse Wife for the ten monthly mortgage payments is reversed. However, to prevent undue hardship on Husband in his reliance upon the trial court's original judgment, the case is remanded to the trial court for a determination as to the time and manner in which the reimbursement is to be made.

*Gotten v. Gotten*, 748 S.W.2d 430, 431 -432 (Tenn. Ct. App. 1987)(citations omitted).

Father cites *Bunch v. Bunch*, No. 03A01-9805-GS-00156, 1999 WL 172674, at *1 (Tenn. Ct. App. Mar. 24, 1999), in support of his argument. In *Bunch*, this Court remanded a divorce case to the trial court for a redetermination of the value of the husband's business and for a redetermination of the distribution of marital assets based upon the new value assigned by the trial court. *Id.* at *1. This Court found that the business was worth more than the trial court originally found and that a redetermination was necessary. *Id.* This Court stated:

[W]e believe that a remand for a possible reapportionment of marital assets, absent any actual, specific modifications to the previous distribution, presents a different situation from one in which the lower court's judgment is modified to reflect the appellate court's revised specific monetary determination.

*Id*. at *4.

In *Bunch*, we held that:

[T]he date on which the trial court entered judgment after reapportioning the parties' marital assets upon remand - April 7, 1998 - is the date upon which it "returned the verdict" for purposes of T.C.A. § 47-14-122. We therefore hold that Wife is entitled to interest on the amount awarded to her from that date, and not from the date of the trial court's original divorce decree.

*Id.* at *5.

-8-

Father argues *Bunch* is analogous to the instant case, because like *Bunch*, in *Cunningham I*, this Court reversed and remanded the issue of the value of Father's business, and ordered the trial court to recalculate the value from $1,300,000.00 to a range between $546,710.00 and $624,864.00. *Cunningham I*, 2000 WL 33191364, at *3. Such redetermination necessitated a recalculation of all other awards, including alimony and child support. *Id.*

In the instant case, the alimony and child support arrearages should accrue from the original order. Father had the obligation to pay from the date of the original order, January 20, 1999, and although the amount he was obligated to pay was decreased, his obligation to pay never ceased. Father cites no case law that supports his argument that the alimony arrearage should accrue from the date of the amended order; rather, all of Father's presented cases support the contention that the *statutory interest* should accrue from such date. We do find, however, that the statutory interest for the alimony *in solido* and the rehabilitative alimony should run from the date of the amended order, September 25, 2002. Because all other awards remained the same upon remand, statutory interest for all the other awards (*i.e.*, child support award, division of bank accounts, division of retirement accounts, etc.) should accrue from January 20, 1999, at the current statutory rate. Accordingly, we reverse the trial court's award, and remand the case to the trial court for calculation of the statutory interest in accordance with our findings.

Next, Father contends that the trial court erred in the accounting of payments made by Father to Mother towards the division of property. Although the calculations regarding interest have been remanded, this issue is not entirely pretermitted. As the Order currently stands, the main issue relates to Father's payment of $230,000.00 to the Clerk and Master. According to the record, $200,000.00 of the payment was supposed to be credited toward the alimony *in solido* award and the other $30,000 was to go towards Mother's award of $115,000.00 for various bank accounts. The trial court's Order does not include the $30,000, and we find that the Order should reflect this amount as a payment made by Father.

One other issue relating to this amount is our holding in *Cunningham II*. In our previous Opinion, we held that the interest accrued while the $230,000.00 was in the court's possession is Mother's, and Father should not be given credit for the interest that accrued ($29,331.81). *Cunningham II*, 2004 WL 57088, at *5. Based on our previous holding, Father should not get credit for this amount, and the $29,331.81 amount should not be included in the alimony *in solido* arrearage or interest calculation.

Father next asserts that the trial court erred by failing to grant his April 2003 petition to modify child support. The 1997 divorce decree entered in this matter ordered Father to pay child support in the amount of $10,686 per month, $4,486 of which was to be deposited into an educational trust account for the parties' minor child. Father asserts that, since the time the child support order was entered in 1997, his income has decreased from more than $900,000 per year to approximately $412,248 per year. Father additionally asserts that, since the original order was entered in 1997, he has been ordered to pay child support in the amount of $3,000 per month in support of two biological children born to another mother. Father's allegations with respect to his

-9-

income and the additional child support obligation are apparently undisputed. His federal income tax returns are included in the record.

It is well settled that the trial court must apply the child support guidelines to determine the presumptively correct amount of child support. Tenn. Code Ann. § 36-5-101(e)(1)(A) (2005 & Supp. 2007). Under the income shares model, the trial court is required to use the forms designated in section 1240-2-4-.04 of the Child Support Guidelines to determine that presumptive child support obligation. Tenn. Comp. R. & Regs. 1240-2-4-.04(1). However, if the trial court finds sufficient evidence to rebut the presumptive support obligation, the trial court must make written findings that the application of the child support guidelines would be unjust or inappropriate in the particular case and that the best interests of the child(ren) would be served by a deviation in the child support amount. Tenn. Code Ann. § 36-5-101(e)(1)(A)(2005 & Supp. 2007); Tenn. Comp. R. & Regs. § 1240-2-4-.01(1)(e); Tenn. Comp. R. & Regs. 1240-2-4-.07; *e.g., Vaughn v. Vaughn*, No. W2007-00124-COA-R3-CV, 2008 WL 162543, at *4 (Tenn. Ct. App. Jan. 18, 2008). These findings must include a statement of the amount of support that would have been ordered under the child support guidelines and a justification for the variance. Tenn. Code Ann. § 36-4-101(e)(1)(a)(2005 & Supp. 2007).

All modifications to child support orders entered before the income shares model became effective in 2005 must be calculated under the income shares guidelines. Tenn. Comp. R. & Regs. 1240-2-4-.05(1). A child support order may be modified upon a finding of a significant variance. Tenn. Comp. R. & Regs. 1240-2-4-.05(2) For all child support orders established before January 18, 2005, under the former flat percentage guidelines, a variance includes, *inter alia*, a change of at least fifteen (15) percent in the gross income of the obligor (alternative residential parent, "ARP") and/or a change in the number of children for whom the ARP is legally responsible and actually supporting. *Id.*

When reviewing a trial court's order on a petition for modification of child support, we review the trial court's findings of fact *de novo* on the record with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

In its September 2006 order, the trial court's "findings" with respect to Father's petition to modify child support merely stated: "13: Should the child support be modified? No." The trial court then denied Father's petition to modify. The trial court made no findings with respect to Father's current income or additional child support obligations, did not determine Father's presumptive child support under the current child support guidelines, and made no findings to support a deviation, if any, from those guidelines.

In light of Father's apparently undisputed allegations that his income has decreased significantly and that he has been ordered to pay child support for two additional children, and in

light of the paucity of the trial court's order with respect to Father's petition to modify child support, we must vacate the trial court's denial of Father's petition to modify and remand for further proceedings. Upon remand, the trial court is instructed to make particular findings with respect to Father's income and additional child support obligations, to determine Father's presumptive child support obligation under the current child support guidelines, and, should the trial court determine that a deviation from the guidelines is warranted, to support that deviation with written findings.

Father also argues that the trial court erred when it refused to modify Mother's monthly rehabilitative award from $5,500.00 to a lesser amount. He contends that a substantial and material change of circumstances has occurred, namely, that his income has decreased from a gross income of $991,459.00 in 1997 to a gross income of $462,442 in 2004, and he has become obligated to support two additional children. Regarding an award of spousal support, this court has declared on numerous occasions that a trial court has broad discretion in determining the type, amount, and duration of alimony, based upon the particular facts of each case. *Wood v. Wood,* No. M2003-00193-COA-R3-CV, 2004 WL 3008875, at *4, (Tenn. Ct. App., filed Dec. 28, 2004); *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004). As an appellate court, we are disinclined to second guess a trial court's alimony decision unless it is not supported by the evidence or is contrary to public policies reflected in the applicable statutes. *Nelson v. Nelson,* 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002).

> A trial court is required to consider the following statutory factors in making an alimony award:
>
> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

*Mimms v. Mimms*, 234 S.W.3d 634, 638,(Tenn. Ct. App. 2007)(citing Tenn. Code Ann. § 36-5-121(i)).

The two most important factors a trial court must consider are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *Id.* (citing *Bratton v. Bratton,* 136 S.W.3d 595, 604 (Tenn. 2004)).

Although Father's reported income has decreased, he still has the ability to pay the required amount. We note that this alimony is rehabilitative, and is ordered to last for only seven (7) years from the Order for Absolute Divorce. Further, in *Cunningham I* and *Cunningham II*, we affirmed the trial court's conclusion that Mother's rehabilitation is possible, and that rehabilitative alimony is appropriate in this case. *Cunningham I*, 2000 WL 33191364, at *5; *Cunningham II*, 2004 WL 57088, at *3. Father raised his arguments at the trial level, and his petition to modify this award was denied. In light of the record and the factors listed in Tennessee Code Annotated § 36-5-101, we do not believe that the trial court abused its discretion in declining to modify this award.

Next, Father argues that the trial court erred when it denied Father's motion to modify the parenting schedule. A child custody or visitation order may be modified when the petitioner proves by a preponderance of the evidence that a substantial and material change in circumstance has occurred such that a change to the custody or visitation order would be in the best interest of the child. Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). A material change of circumstance does not require a showing of a substantial risk of harm to the child. Tenn. Code Ann. § 36-6-101(a)(2)(C). A material change of circumstance may include:

[A] significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan;

or other circumstances making a change in the residential parenting time in the best interest of the child.

*Id.*

In determining whether a material change in circumstance has occurred, the court must consider

several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

*Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003) (citing *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002)). A determination that a material change of circumstances has occurred is only the first step. Next, the court must determine whether a modification of the plan is in the best interest of the child. Tenn. Code Ann. § 36-6-106. To assess what arrangement is in the child's best interest, the court shall consider all relevant factors which include the following, where applicable:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(10) (Supp. 2007).

Currently, the parties' child spends each week with Mother and each weekend with Father during the school year. During the summer, the child spends all but two weeks with Father, and the remaining two weeks are spent with Mother. Father contends that at the time of the divorce, he worked 80 hours per week and the child was five years of age. At the time Father petitioned for a parenting schedule modification, he claimed to be working 60 hours per week and that the child was in her preteen years. Father alleges that his 20 hour weekly work decrease and the older age of the child constitutes a material change in circumstance. He argues that a modified parenting schedule of a "week on week off" rotation would give both parents equal exposure to the child during the school and summer seasons.

First, we must analyze whether these changes constitute a material change in circumstance. Considering the factors in *Cranston*, we note that the child's age and Father's work reduction did change after the entry of the Original Order for Absolute Divorce. However, it is a known fact that, absent death, people age. Consequently, the fact that the child's age changed from the time of the entry of judgment does not, *ipso facto*, result in a material change in circumstance. That being said, there may be material changes that flow from the child's growing older, but not because of the child's aging in and of itself. The child's aging is a change that was known at the time the Order

-14-

was entered, and it is unclear from the record whether Father's decreased work load was known or reasonably anticipated at the time the Order was entered. The child has operated under the established schedule since the original order of divorce, and both parties acknowledge that the child is thriving. We find that a material change in circumstances has not occurred. The trial court correctly denied Father's requested modification. We affirm.

Father's final issue is whether the trial court erred by awarding attorney's fees to Mother. Generally, "[t]he allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)(quoting *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn. 1995)). In *Mimms*, this Court provided the following guidance for determining whether an award of attorney's fees in a divorce case is proper:

> Trial courts have discretion to make awards to help a spouse defray his or her legal expenses in a divorce case. These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or would be required to deplete his or her resources in order to pay these expenses.

*Mimms v. Mimms,* 234 S.W.3d 634, 640-641 (Tenn. Ct. App. 2007)(citations omitted)(quoting *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994)).

In the instant case, Mother does not lack sufficient funds to pay her attorney, as she has been awarded a generous alimony *in solido* amount of $400,000.00, in addition to the monthly rehabilitative alimony in the amount of $5,500 for seven years. A payment of $10,739.49 for her attorney's fees would not deplete her considerable financial resources. We, therefore, reverse the trial court's award of attorney's fees against Father. Finally, Mother requests an award of attorney's fees which she has incurred on this appeal. We are of the opinion that each party should bear his or her own attorney's fees on appeal.

### *Conclusion*

For the foregoing reasons, we affirm in part and reverse in part the decision of the trial court. In summary, we remand the case to the trial court for a recalculation of the statutory interest and arrearages consistent with this Opinion, and a redetermination of whether the facts in this case support an upward deviation from the Child Support Guidelines. If the trial court finds that the upward deviation is proper, then the trial court must issue written findings of fact stating as such. Costs of this appeal are taxed one-half against the appellant, Dr. Louis Ernest Cunningham, and his surety, and one-half against the appellee, Ms. Cheryl Lynne Cheatham Cunningham, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-15-